181 So.2d 359 (1965)
AMERICAN NATIONAL INSURANCE COMPANY, a Texas corporation authorized to do business in the State of Florida, Appellant,
v.
Mario de CARDENAS, Appellee.
No. 65-368.
District Court of Appeal of Florida. Third District.
December 28, 1965.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Sam Daniels, Miami, for appellant.
Carey, Terry, Dwyer, Austin, Cole & Stephens and Joseph A. McGowan, Miami, for appellee.
Before HENDRY, C.J., and TILLMAN PEARSON and BARKDULL, JJ.
TILLMAN PEARSON, Judge.
The appellant, American National Insurance Company, was defendant in the trial court. The action for declaratory decree was predicated upon plaintiff's claim that he was entitled to the cash surrender value, in United States dollars, of an insurance policy issued by the appellant. The policy called for payment in Galveston, Texas, in Cuban pesos. At the conclusion *360 of the trial, the court entered a final decree for the plaintiff, policyholder, in which it found that he was entitled to $1,948.65. This amount was reached upon a determination that the appellee was entitled to 1984.65 pesos, which the court converted into United States dollars at the rate established by the Cuban government  one dollar for each peso. In addition, the trial judge awarded the plaintiff an attorney's fee, pursuant to section 627.0127, Florida Statutes, F.S.A., in the amount of $750.
This appeal is from the final decree. The appellant, insurance company, presents four points. Points one and two will be hereinafter discussed. Points three and four were decided in Pan-American Life Insurance Company v. Recio, Fla.App. 1963, 154 So.2d 197.
The appellant's first point urges that the court erred in finding that one Cuban peso is equivalent to one United States dollar. The record reveals that the value of the Cuban peso at the time of demand may be established in two ways: (1) in Cuba, where the rate of exchange was fixed by decree at one peso for one dollar; or (2) in the United States, where Cuban pesos could be purchased for 15 cents to 18 cents  the variation being based upon the amount purchased. There is no showing in this record that the purchase of Cuban pesos was illegal or against the public policy of this jurisdiction at the time of the demand for payment.
In the present case, the defendant was under a contractual obligation to pay foreign currency in the United States  Cuban pesos in Galveston, Texas. Except for our rules of judicial procedure which require money judgments to be expressed in United States currency, the defendant could discharge its debt by simply paying 1,984.65 Cuban pesos, which it could have bought for less than $300.00.
As stated in Fraenkel, Foreign Moneys in Domestic Courts, 35 Col.L.Rev. 360:
"* * * One basic difficulty is due to the doctrine of Anglo-American law that judgment may not be entered in a foreign currency. If judgment might be entered in the foreign currency, as is possible in many countries of continental Europe, then in many of the situations which have arisen no problem would be presented at all. The court would simply enter judgment for the appropriate amount of foreign money."
The solution to the problem is likewise stated in Fraenkel's Article as follows:
"* * * It was, however, ultimately recognized that when the value of foreign money became an issue it was to be determined by the facts and not by legislative fiat." 35 Col.L.Rev. at 361.
The holding below, that the official rate prevails over that of the commercial market, is directly contrary to the views expressed by contemporary authorities. See 5 Corbin on Contracts, § 1005; 5 Williston on Contracts, § 1410A (Rev.Ed.); and the cases collected in 70 C.J.S. Payment § 20b. Corbin states:
"* * * If a contract requires payment in a foreign currency to be made in the United States, that required payment will be valued in dollars in accordance with the prevailing rate of exchange at the date when payment was due  the date of breach." 5 Corbin on Contracts, § 1005, at page 57.
Research discloses no Florida case which involves a contractual obligation to pay foreign money in the United States. However, in Huntley v. Alejandre, Fla.App. 1962, 139 So.2d 911, suit was brought in Florida on an obligation to pay Cuban pesos in Cuba. In affirming a judgment for United States dollars, this Court said:
"The appellants have also urged error in the failure of the trial judge to render judgment in pesos, or its equivalent *361 in American currency. Assuming [which we do not here decide] that the trial court should have entered its judgment in pesos, or its equivalent in American currency [see: Revillon v. Demme, 114 Misc. 1, 185 N.Y.S. 443], this point is not well taken by the appellants as the record reveals that the official rate of exchange was equal and the appellants have offered no evidence to the contrary. Therefore, the final judgment is affirmed." (139 So.2d at 912).
The Huntley case is not authority for the proposition that the official rate should prevail in the present case. There was no evidence, in the Huntley case, of any commercial rate which was different from the official rate, and the case involved an obligation to pay pesos in Cuba. It was therefore appropriate that a judgment upon the transitory action should provide for payment in United States dollars equivalent to the pesos at the place of payment provided in the contract.
The second point presented by the appellant urges that the court erred in awarding, pursuant to section 627.0127, Florida Statutes, F.S.A., an attorney's fee to the plaintiff because there is no showing in the record that suit was brought after 60 days had expired from the date of the proof of claim. The section relied upon for the allowance of the attorney's fee in as follows:
"627.0127 Attorney fee.  Upon the rendition of a judgment or decree by any of the courts of this state against an insurer in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial judge shall adjudge or decree against the insurer and in favor of the insured or beneficiary, a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had. Except, that without any prejudice or effect whatsoever as to suits relating to the other kinds of insurance, no such attorney fee shall be allowed in any such suit based on a claim arising under a life insurance policy or annuity contract if such suit was commenced prior to expiration of sixty days after proof of the claim was duly filed with the insurer. Where so awarded compensation or fees of the attorney shall be included in the judgment or decree rendered in the case."
The final decree expressly finds, "that the plaintiff made demand for the cash surrender or loan value of said policy as of September 7, 1962". September 7, 1962, was the date the declaratory decree action was filed in this cause.
Under section 627.0127, Florida Statutes, F.S.A., and this Court's opinion in Confederation Life Association v. Ugalde, Fla.App. 1963, 151 So.2d 315, attorney's fees are not recoverable in this case.
Upon this point, the appellee urges that the point has been waived because the answer of the defendant admitted without exception that the claim had been made for the cash surrender value. This contention is without merit. The complaint did not allege that demand had been made sixty days prior to the date upon which the complaint was filed; therefore, the answer only admitted that a claim had been made, and, upon the facts in this case, it did not constitute a waiver of compliance with the statute. The authority to assess an attorney's fee exists solely by virtue of section 627.0127, Florida Statutes, F.S.A., and since the section is in the nature of a penalty, it should be strictly construed. Main v. Benjamin Foster Co., 141 Fla. 91, 192 So. 602, 126 A.L.R. 1434 (1939); American Fidelity & Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir.1958). Therefore, the chancellor had no authority to award an attorney's fee when it affirmatively appeared that the conditions upon which the authority depended did not exist.
*362 The final decree appealed is reversed, and the cause is remanded with directions to enter a decree in accordance with the views expressed herein.
Reversed and remanded.